1  Giovanni Orantes (SBN 190060)
2  ORANTES LAW FIRM, P.C.
   3435 Wilshire Blvd., Suite 1980
3  Los Angeles, California 90010
   Telephone:(213) 389-4362
4  Facsimile: (877) 789-5776
5
6  Attorneys for Plaintiff
7

FILED
CLERK, U.S. DISTRICT COURT

APR - 6 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

8                UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10                 LOS ANGELES DIVISION

11  Cosme Rafael Sibrian,              )  Case No. CV11 02903 RSWL SSx
12                                     )
                Plaintiff,             )  Complaint to Set Aside Sale, for
13                                     )  Damages, Declaratory and Injunctive
    vs.                                )  Relief for:
14                                     )  1.  Violation of Security First Rule –
15  JPMorgan Chase Bank, N.A., a New   )      Cal. C.C.P. § 726;
    York corporation; Quality Loan     )  2.  Wrongful Foreclosure;
16  Services, a California corporation; and )  3.  Quiet Title;
17  Does 1-10                          )  4.  Slander of Title;
                                       )  5.  Cancellation of Instrument;
18              Defendants.            )  6.  Breach of Oral Contract;
19                                     )  7.  Breach of Written Contract;
                                       )  8.  Promissory Estoppel;
20  ─────────────────────────         )  9.  Negligence;
21                                     )  10. Negligent Misrepresentation;
22                                     )  11. Violation of Rosenthal Fair Debt
                                       )      Collection Practices Act
23                                     )  12. Unfair Business Practices under
24                                     )      B&P Code § 17200 et seq.;
                                          13. Turnover;
25                                        14. Avoidance of Transfer under 11
26                                            U.S.C. § 544;
27                                        15. Avoidance of Fraudulent Transfer
                                              under 11 U.S.C. § 548;
28                                        16. Avoidance of Preference under 11
                                       |      U.S.C. § 547;

                        COMPLAINT

17. Recovery and Preservation of Avoided Transfers Pursuant to 11 U.S.C. §§ 550(a), 551;
18. Declaratory Judgment that Real Property is Property of the Estate;
19. Imposition of Constructive Trust against the Transferee Defendant;
20. Violation of the Automatic Stay Arising Under 11 U.S.C. § 362(a); and
21. Request for Award of Attorneys' Fees

**REQUEST FOR JURY TRIAL**

Plaintiff alleges as follows:

JURISDICTION AND VENUE

1.      On January 13, 2011 (the "Petition Date"), Cosme Rafael Sibrian, a resident of Los Angeles County, the Debtor and Plaintiff herein, filed the present voluntary petition under chapter 13 of the Bankruptcy Code.  Therefore, this Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.  This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), (G), (H), (K) and (O).

2.      Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) in that the instant proceeding arises in or is related to the above-captioned case (the "Bankruptcy Case") under Title 11 of the United States Code (the "Bankruptcy Code"), which is still pending.

PARTIES

3.      Plaintiff Cosme Rafael Sibrian is now and has been at all times relevant to this Complaint, a natural person residing in the County of Los Angeles, State of California.

2

COMPLAINT

1       4.   Plaintiff is informed and believes that Defendant JPMORGAN

2   CHASE BANK, N.A., is a corporation formed under the laws of the State of Ohio

3   (hereinafter "Chase").

4       5.   Plaintiff is informed and believes that Defendant QUALITY LOAN

5   SERVICE CORPORATION is a corporation formed under the laws of the State of

6   California (hereinafter "QLS").   QLS is in the business of conducting non-

7   judicial foreclosures in California and/or assisting foreclosure trustees.

8       6.   Plaintiff is informed and believes that Defendant Federal Deposit

9   Insurance Corporation as Receiver For Washington Mutual Bank is a foreign

10   corporation.  Plaintiff will amend this Complaint for origination claims when

11   administrative process allows it.

12       7.   The defendants herein named as "all persons unknown, claiming any

13   legal or equitable right, title, estate, lien, or interest in the property described in

14   the complaint adverse to plaintiff's title or any cloud on plaintiff's title thereto"

15   are hereinafter sometimes referred to as the "unknown defendants" and are

16   unknown to Plaintiff. These unknown defendants and each of them claim or

17   appear to claim some right, title, estate, lien, or interest in the property described

18   in Paragraph 16, adverse to Plaintiff's title. Their claims, and each of them,

19   constitute a cloud on Plaintiff's title to the property.

20       8.   Plaintiff is ignorant of the true names and capacities of defendants

21   sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants

22   by such fictitious names to sue all persons unknown claiming any legal or

23   equitable right, title, estate, lien, or interest in the property described in this

24   complaint adverse to Plaintiff's title, or any cloud on Plaintiff's title thereto.

25   Plaintiff will amend this complaint to allege their true names and capacities when

26   ascertained.

27       9.   Defendants sued herein as DOES 1 through 10 are contractually,

28   strictly, negligently, intentionally, vicariously liable and or otherwise legally

1    responsible in some manner for each and every act, omission, obligation, event or
2    happening set forth in this Complaint, and that each of said fictitiously named
3    Defendants is indebted to Plaintiff as hereinafter alleged.

4        10.    The use of the term "Defendants" in any of the allegations in this
5    Complaint, unless specifically otherwise set forth, is intended to include and
6    charge both jointly and severally, not only named Defendants, but all Defendants
7    designated as well.

8        11.    Plaintiffs are informed and believe, and based on that information
9    and belief allege, that each of defendants designated as a DOE is legally
10   responsible for the events and happenings referred to in this complaint, and
11   unlawfully caused the injuries and damages to plaintiffs alleged in this complaint.

12       12.    Unless otherwise alleged in this complaint, plaintiffs are informed
13   and believe, and on the basis of that information and belief allege, that at all times
14   mentioned in this complaint, defendants were the agents and employees of their
15   codefendants, and in doing the things alleged in this complaint were acting within
16   the course and scope of that agency and employment.

17       13.    Defendants, and each of them, knowingly and willfully conspired,
18   engaged in a common enterprise, and engaged in a common course of conduct to
19   accomplish the wrongs complained of herein. The purpose and effect of the
20   conspiracy, common enterprise, and common course of conduct complained of
21   was, inter alia, to financially benefit Defendants at the expense of Plaintiff by
22   engaging in fraudulent activities. Defendants accomplished their conspiracy,
23   common enterprise, and common course of conduct by misrepresenting and
24   concealing material information regarding the servicing of loans, and by taking
25   steps and making statements in furtherance of their wrongdoing as specified
26   herein. Each Defendant was a direct, necessary and substantial participant in the
27   conspiracy, common enterprise and common course of conduct complained of
28   herein, and was aware of its overall contribution to and furtherance thereof.

4

1  Defendants' wrongful acts include, inter alia, all of the acts that each of them are
2  alleged to have committed in furtherance of the wrongful conduct of complained
3  of herein.

4      14.    Any applicable statutes of limitations have been tolled by the
5  Defendants' continuing, knowing, and active concealment of the facts alleged
6  herein. Despite exercising reasonable diligence, Plaintiff could not have
7  discovered, did not discover, and was prevented from discovering, the
8  wrongdoing complained of herein.

9      15.    In the alternative, Defendants should be estopped from relying on any
10  statutes of limitations. Defendants have been under a continuing duty to disclose
11  the true character, nature, and quality of their financial services and debt
12  collection practices. Defendants owed Plaintiff an affirmative duty of full and fair
13  disclosure, but knowingly failed to honor and discharge such duty.

14                          GENERAL ALLEGATIONS
15      16.    Mr. Sibrian originally purchased his home in May, 2001 for
16  approximately $150,000. His home is commonly known as 3715 E. 52nd Street,
17  Maywood, California 90270, Assessor's Parcel Number: 6311-001-017, with a
18  full legal description as follows: The West 67 Feet of Lot 1632 of Tract No. 2829,
19  in the City of Maywood, County of Los Angeles, State of California, as Per Map
20  Recorded in Book 42 Page(s) 30 of Maps, in the Office of the County Recorder of
21  Said County (hereinafter, the "Home"). When he first acquired it, the Home had
22  only two bedrooms and one bathroom as well as a garage. Approximately one
23  year after moving into the Home, he started building two bedrooms to the main
24  house. Mr. Sibrian obtained the required City licenses and invested his hard-
25  earned savings in the amount of approximately $80,000 to enhance his Home.
26  Construction took from eight months to about one year. In approximately mid-
27  2003, Mr. Sibrian started planning to build two apartments over his 5-car garage
28  area using his savings as well as a line of credit. Ultimately, he spent well over

5

COMPLAINT

1 | $250,000 to complete the apartments. Both apartments have one bedroom, full

2 | bathroom, living room, full kitchen and balcony.

3 |     17.    In July 2007, Mr. Sibrian refinanced the two loans then secured by

4 | his Home. He got an adjustable rate mortgage with Washington Mutual Bank, FA

5 | as the purported lender even though he was applying for a fixed rate mortgage, for

6 | which he was well-qualified as he had attained a more than 700 credit score after

7 | years of timely payment on his previous mortgages. Despite his clear request for

8 | a fixed rate mortgage, Washington Mutual and its agents instead convinced him to

9 | take the adjustable rate mortgage they had packaged for him, with the promise of

10 | a refinancing in the near future. Mr. Sibrian executed a Promissory Note ("Note")

11 | as part of the Loan transaction. Additionally, based upon information and belief,

12 | in connection with the Loan transaction, Washington Mutual took a security

13 | interest in the Home in the form of a Deed of Trust recorded with the Los Angeles

14 | Recorder's Office. A true and correct copy of the Deed of Trust (Document No.

15 | 20071709454) related to this loan is attached hereto as Exhibit "1." The Deed of

16 | Trust designates as "Trustee" "CALIFORNIA RECONVEYANCE COMPANY,

17 | A CALIFORNIA CORP". The Deed of Trust allegedly secured a promissory note

18 | executed on July 3, 2007 in the amount of $475,000 payable in monthly payments

19 | plus interest to pay the debt in full not later than August 1, 2037. The original

20 | monthly payment was $2,233.78 and Mr. Sibrian authorized Washington Mutual

21 | to automatically draft every month his payment from his bank account.

22 |     18.    Mr. Sibrian made his monthly payments on time until approximately

23 | November 2008. At that time, he came to the realization that he may not be able

24 | to refinance the adjustable rate mortgage as he was promised and his mortgage

25 | would adjust in the future and he needed to act to get a fixed rate mortgage. He

26 | was advised by the bank that he needed to stop making his mortgage payments on

27 | time if he wanted to negotiate a modification of his adjustable rate mortgage. Mr.

28 | Sibrian's goal was simply to get a fixed rate. From that time, Mr. Sibrian actively

1  engaged Washington Mutual and then Chase in attempting to obtain a

2  modification and submitted all applications and documents promptly when

3  requested.  On or approximately July 2009, in lieu of foreclosure, Chase entered

4  into a Trial Plan Agreement with Mr. Sibrian for payments of approximately

5  $1,578.88 per month starting on August 1, 2009.  A true and correct copy of the

6  Trial Plan Agreement, of which Chase has a signed copy, is attached hereto as

7  Exhibit "2."  He made the payments via Western Union and U.S. Mail.

8  Concurrently, to ostensibly continue negotiating the loan modification,

9  Washington Mutual and then Chase continued to have Mr. Sibrian submit bank

10  statements, pay stubs and profit and loss statements, among other documents,

11  which he did submit timely.

12      19.    Mr. Sibrian made the payments that came due under the Trial Plan

13  Agreement until, and including, November 2010 (15 months!).  The only

14  interruption in payments during this period occurred when Mr. Sibrian sent two

15  payments to the same P.O. Box assigned to Mr. Sibrian by Chase, but Chase

16  claimed not to have received the cashiers' checks.  Fortunately, Mr. Sibrian had

17  saved the cashier's check receipts and was able to recover the funds after 90 days

18  had passed.

19      20.    County Records indicate that Defendant QLS recorded a Notice of

20  Default against Mr. Sibrian on March 18, 2009 (Document No. 20090386830)

21  (the "First Default Notice") and a second one on March 19, 2009 (Document No.

22  20090397378) (the "Second Default Notice").  On March 25, 2009, Quality Loan

23  Services filed a Notice of Rescission (Document No. 20090424850) apparently of

24  the First Notice of Default.  All of these three documents were executed as

25  follows:

26      "Quality Loan Service Corp., AS AGENT FOR BENEFICIARY

27      BY: LSI Title Company"

28

1   True and correct copies of the foregoing three documents are attached hereto as
2   Exhibits "3" through "5," respectively.  None of the Defendants recorded any
3   further documents until July 15, 2010.

4        21.    On July 15, 2010, Defendant QLS recorded a Notice of Trustee's
5   Sale, Document Number 20100968347 ("Sale Notice").  Defendant QLS signed
6   the Sale Notice as "Trustee."  The Sale Notice scheduled a sale on August 4, 2010
7   at 10:30 AM and indicated that the "Amount of unpaid balance and other charges"
8   was $544,419.88, which exceeds the correct amount of unpaid balance and other
9   valid charges by more than ten thousand dollars.  The recordation of the Sale
10  Notice is remarkable because Mr. Sibrian was in compliance with the Trial Plan
11  Agreement at the time.  However, Mr. Sibrian never noticed any signs posted on
12  any part of his Home either on the structure of the living areas or the Home's
13  metal and brick fence.  In fact, even his mother, who resided at the Home at all
14  relevant times and spent most of her time at home, never noticed any notice
15  posted on any part of the Home.  Mr. Sibrian's mother continues to reside in the
16  Home with Mr. Sibrian.

17       22.    By letter dated November 2, 2010, Mr. Sibrian was notified that he
18  was rejected for a permanent loan modification purportedly because he did not
19  satisfy the Home Affordable Modification Program (HAMP) or any Chase
20  modification program.  However, at or approximately at the same time, Mr.
21  Sibrian, through Alonso Flores of MVP Real Estate continued to communicate
22  with Michael Ishoo, a Chase "Relationship Manager" and to transmit via FedEx
23  and facsimile documents requested via e-mail and telephone as recently as
24  Saturday, October 23, 2010.

25       23.    Even though Mr. Sibrian continued to hold hope that he might get a
26  modification and continued to provide the documentation and disclosures Chase
27  requested, he learned about his current bankruptcy counsel from an acquaintance
28  and decided it was time to make sure that he could afford to pay back any

8

1   reinstatement amount and learned that a bankruptcy case would allow him to pay
2   back a reinstatement amount over 36 to 60 months, instead of having to raise the
3   funds all at once. Since he did not have notice of a trustee sale, Mr. Sibrian
4   retained bankruptcy counsel on or approximately December 22, 2010 to represent
5   him in a case under Chapter 13 of the bankruptcy code, which would reinstate and
6   allow him to get current on the loan purportedly secured by his Home, and started
7   to prepare his bankruptcy petition. He took the required pre-petition Credit
8   Counseling on January 3, 2011. In the week before the trustee sale, Mr. Sibrian
9   telephoned his counsel to provide information for his petition and even early in
10  the morning on January 10, 2011, Mr. Sibrian made an appointment for January
11  12, 2011 to visit his counsel's office to complete and sign the bankruptcy petition
12  and other documents. Before his appointment with his bankruptcy counsel on
13  January 12, 2011, Mr. Sibrian received documents from his mother that she
14  received at the Home from real estate agents informing her and him that his house
15  had been sold at a foreclosure sale. Mr. Sibrian immediately went to his counsel's
16  office and caused to be filed his petition under Chapter 13 of the Bankruptcy Code
17  on the Petition Date, i.e., January 13, 2011.

18      24.   A Trustee's Deed Upon Sale was recorded on January 19, 2011,
19  Document No. 20110098885 ("Trustee's Deed). Although the form itself does
20  not indicated what entity requested the recordation, it was executed by Karla
21  Sanchez, Assistant Secretary of Quality Loan Service Corporation, which refers to
22  itself "as Trustee" purportedly "so designated in the Deed of Trust hereunder more
23  particularly described or as duly appointed Trustee)". The Trustee's Deed
24  indicates that the "grantee IS the foreclosing beneficiary." (bold in original).
25  Notably, the Trustee's Deed indicates that the amount of the unpaid debt together
26  with costs was $532,373.51 (that is more than $12,000 less than the Notice of
27  Sale.

28

COMPLAINT

25.   Mr. Sibrian then completed his bankruptcy petition within the permitted time and proposed a Chapter 13 plan of reorganization through which, in exchange for a reconveyance of the Home, he proposes to make his regular monthly mortgage payment and pay the arrears on the loan purportedly secured by his Home over the 5-year life of the Chapter 13 plan. As of the time of the filing of this Complaint, Mr. Sibrian remains current on all the plan payments that have come due on his Chapter 13 plan (which consist largely of arrears on his home mortgage) and has been making timely mortgage payments to Chase under the original promissory note and, as required by Local Bankruptcy Rule 3015-1, has been filing proof of actually making such payments. Chase has not returned such payments.

26.   Soon after January 19, 2011, even though the automatic stay under Section 362 of the Bankruptcy Code prohibited such action, JP Morgan Chase, N.A. filed an unlawful detainer complaint, Case No. 11U00177, and handed a notice to vacate to the two tenants of Mr. Sibrian's apartments, including the tenants of Apartment A, Rosa Ramos and Jaime Cardona, have not paid their monthly rent of $1,000 since that time. In other words, Ms. Ramos and Mr. Cardona have not paid their $1,000 monthly rent in February, 2011 or March 2011 and have expressed their intention in humiliating and demeaning terms not to make any rent payments to Mr. Sibrian hereafter even though they continue to reside in Mr. Sibrian's apartments.

27.   Mr. Sibrian is informed and believes that Washington Mutual did not fund his promissory note. Instead, Washington Mutual was simply a conduit to allow mortgage backed securities to purportedly obtain a lien on real property collateral that they would otherwise not be able to obtain. Research on the "EDGAR" database of the Securities and Exchange Commission reveals the existence of several trusts into which Washington Mutual transferred mortgages (or were always the beneficiaries of mortgages), such as the one at issue, in 2007

10

1   and later.  After further investigation and discovery, Plaintiff reserves the right to
2   amend this complaint, if necessary, to specify the identity of the exact trust or
3   other entity, which is the true beneficiary of the note and Deed of Trust at issue.
4   Since Washington Mutual was not the beneficiary of the Deed of Trust, it follows
5   that JPMorgan Chase Bank, N.A. is not and was not the beneficiary at any time
6   relevant to the foreclosure sale of Mr. Sibrian's Home even though it purportedly
7   acquired the assets of Washington Mutual Bank, Inc. by that PURCHASE AND
8   ASSUMPTION AGREEMENT WHOLE BANK among FEDERAL DEPOSIT
9   INSURACE CORPORATION, RECEIVER OF WASHINGTON MUTUAL
10  BANK, HENDERSON, NEVADA; FEDERAL DEPOSIT INSURANCE
11  CORPORATION and JPMORGAN CHASE BANK, NATIONAL
12  ASSOCIATION DATED AS OF SEPTEMBER 25, 2008 ("Purchase
13  Agreement").

14      28.    In any event, assuming for the sake of argument that Chase indeed
15  **purchased** the promissory note and Deed of Trust secured by Mr. Sibrian's
16  Home, the foreclosure sale is nevertheless invalid and void as Chase did not
17  merge with Washington Mutual Bank and instead purportedly "purchased"
18  Washington Mutual Bank's assets, which still requires an assignment from
19  Washington Mutual Bank to Chase and <u>no assignment of deed of trust has been</u>
20  <u>recorded with the Office of the Los Angeles County Recorder</u> heretofore.

21      29.    The Trustee's Deed executed by Defendant QLS is invalid and
22  simply void as Defendant QLS is not designated as the Trustee in the Deed of
23  Trust and Defendant QLS did not execute and record a substitution of trustee as
24  required by Section 2934a of the California Civil Code and even by Paragraph 24
25  of the Deed of Trust, which reads as follows: Substitute Trustee.  Lender, at its
26  option, may from time to time appoint a successor trustee to any Trustee
27  appointed hereunder by an instrument executed and acknowledged by Lender and
28  recorded in the office of the Recorder of the county in which the Property is

11

located. . . .". Since there is no assignment of the Deed of Trust from Washington Mutual FA or anybody acting on its behalf to Chase, the substitution of trustee executed by Chase is ineffective and therefore void, which means the foreclosure sale itself is also void.

30.     Furthermore, the Defendants failed to conduct the foreclosure sale of the Home in accordance with the requirements of California Civil Code Sections 2923.5 and 2932.5, and Commercial Code Sections 3301, et seq. Consequently, the Defendants failed to comply with the strict requirements of California Civil Code Sections 2924 et seq., which renders the foreclosure sale of the Home void ab initio as a matter of law.

31.     Mr. Sibrian alleges that Defendants, and each of them, are engaged in and continue to engage in violations of California law, including, but not limited to, Business and Professions Code Section 17200 et seq., Civil Code Sections 1709, 2924 et seq and 2932.5 et seq., and unless restrained will continue to engage in such misconduct, and that a public benefit warrants that Defendants be restrained from such conduct in the future.

32.     It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure. These changes in accessing the state's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided. Those additional foreclosures will further destabilize the housing market with significant, corresponding deleterious effects on the local and state economy.

COMPLAINT

33.     The gravamen of Mr. Sibrian's complaint is that Defendants conducted a foreclosure sale of the Home without any legal authority or standing to do so, and in violation of State laws which were specifically enacted to protect consumers such as Mr. Sibrian from the type of abusive, deceptive, and unfair conduct in which Defendants engaged which are detailed herein by failing to follow the procedure prescribed by such laws to foreclose property. Additionally, the Defendants' foreclosure was wrongful as they purported to engage in negotiations with Mr. Sibrian to modify or otherwise negotiate a workout of the Loan with Mr. Sibrian and Mr. Sibrian relied on such negotiations and forwent seeking relief under Bankruptcy law, among other things, but Defendants surreptitiously (i.e., without providing adequate notice) sold the Home at a foreclosure sale even though they had even accepted payments during the workout negotiations and before, during and after the foreclosure sale. The Defendants have caused Mr. Sibrian damages as well as severe emotional distress.

## FIRST CLAIM FOR RELIEF

### (Violation of the Security-First Rule)

34.     Mr. Sibrian re-alleges and incorporates by reference paragraphs 1 through 33.

35.     From June 25, 2009 through November 2010, inclusive, Plaintiff tendered no less than eleven (11) payments of $1,578.88 totaling $17,367.68 plus additional payments totaling $3,496.38 for a total of $20,864.06 to Chase pursuant to a trial loan modification agreement between Plaintiff and Chase.

36.     Chase received and accepted payments from Plaintiff while foreclosing on the Home. Payments were received and accepted by Chase before and after the date of foreclosure of the Home.

37.     Accordingly, the payments were essentially a "set-off" in which Chase and/or DOES 1 through 10 attempted to satisfy a portion of their debt secured by real property by attaching property other than the secured real

13

property, i.e., the $20,864.06. Plaintiff paid such sum to Chase which it was not entitled to collect given the fact that that they had already chosen to foreclose on the Home. Accordingly, Chase and DOES 1 through 10's actions were a clear violation of the Security First Rule set forth in Code of Civil Procedure ("CCP") §726.

38.     Said violation of CCP §726 and Chase and/or DOES 1 through 10's refusal to return the set-off funds rendered the Deed of Trust null and void. Accordingly, Chase and/or DOES 1 through 10's security interests in the Home did not exist at the time of the foreclosure sale. Therefore, the foreclosure sale was invalid and void.

39.     As a proximate result of Chase and/or DOES 1 through 10's violation of the Security First Rule, Plaintiff has suffered, and will continue to suffer, general and special damages in an amount according to proof at trial, but not less than $1,000,000.

## SECOND CLAIM FOR RELIEF
### (Wrongful Foreclosure)

40.     Mr. Sibrian re-alleges and incorporates by reference paragraphs 1 through 33.

41.     In violation of the strict requirements of Section 2924f of the California Civil Code, the Defendants did not provide appropriate notice of the sale of Mr. Sibrian's Home.

42.     Among other things, the Defendants agreed to postpone any foreclosure sale if Mr. Sibrian applied for a modification of the note and even took agreed-upon monthly payments as consideration for such modification but nevertheless sold the Home at a sale conducted without notice to Mr. Sibrian – any notice previously provided was rendered ineffective by Chase's acts and

14

1   omissions. In fact, at no time did Chase or Defendant QLS post a notice of sale
2   on any part of Mr. Sibrian's Home.

3       43.     Plaintiff is informed and believes and thereon alleges that after the
4   origination and funding of his Loan, it was sold or transferred to investors or other
5   entities and that Chase and DOES 1 through 10 did not own the loans or the
6   corresponding notes at the time of the foreclosure sale. Moreover, QLS was not
7   lawfully appointed as trustee by Chase or DOES 1 through 10. Accordingly, none
8   of the Defendants in this action had the right to declare default, cause notices of
9   default to be issued or recorded, or foreclose on Plaintiff's interest in the Home.
10  None of the Defendants in this action was the note holder or a beneficiary of
11  Plaintiff's Loan at the time of foreclosure.

12      44.     Plaintiff further alleges on information and belief that none of the
13  Defendants in this action were beneficiaries or representatives of the beneficiary.
14  That is, none of them were assigned the Note and/or Deed of Trust executed by
15  Plaintiff. Moreover, none of the signatories to the First Notice of Default, Second
16  Notice of Default, Notice of Sale, and Trustee's Deed had the authority to execute
17  said documents. None of said documents properly disclosed the principals that the
18  individual was signing for. Consequently, all documents upon which the Trustee's
19  Deed was based were invalid and void as well.

20      45.     Chase and DOES 1 through 10 breached its obligation to Plaintiff to
21  modify the loan by proceeding with a foreclosure of the Home when Chase had
22  agreed not to do so. Defendants further breached the provisions of Civil Code
23  Section 2924g(c)(1) which requires postponement of a foreclosure sale by "mutual
24  agreement, whether oral or in writing, of any trustor and any beneficiary." Here,
25  Plaintiff had an oral agreement not to proceed with a foreclosure of the Home.
26  Chase and DOES 1 through 10 breached it. Furthermore, Chase, Defendant QLS
27  and DOES 1 through 10 breached Sections 2924f and 2924g by not providing
28

COMPLAINT

1  proper notice of the postponement of the trustee's sale on January 10, 2011, and

2  not providing notice pursuant to the strict requirements of said code sections.

3       46.    Among other things, Defendants agreed to postpone any sale if Mr.

4  Sibrian applied for a modification of the Loan and even took agreed-upon monthly

5  payments as consideration for such agreement but nevertheless sold the Home at a

6  sale conducted without notice to Mr. Sibrian. Any notice previously provided was

7  rendered ineffective by Chase's acts and omissions.

8       47.    Also, Defendants violated California Civil Code §2923.5(a), which

9  requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower

10  or person by telephone in order to assess the borrower's financial situation and

11  explore options for the borrower to avoid foreclosure. "Section 2923.5(b) requires

12  a default notice to include a declaration "from the mortgagee, beneficiary, or

13  authorized agent" of compliance with section 2923.5, including attempt "with due

14  diligence to contact the borrower as required by this section." None of the

15  Defendants assessed Plaintiff's financial situation correctly or in good faith prior

16  to filing the Notices of Default against the Home in this action. Additionally, the

17  declaration was executed on behalf of a corporation that was not in existence at

18  the time of the declaration. Also, the declaration did not satisfy the requirements

19  of Section 2923.5. Accordingly, the Defendants did not fulfill their legal

20  obligation to Plaintiff prior to filing of the Notices of Default and, therefore, any

21  acts based on the Notice of Default taken thereafter were invalid and void.

22       48.    Alternatively, as a result of Defendant Chase and DOES 1 through

23  10's violation of the Security First Rule, Chase and DOES 1 through 10 no longer

24  had a security interest in the Home at the time of foreclosure. Accordingly,

25  Defendants were prohibited from invoking the power of sale provision in the Deed

26  of Trust as the Home no longer secured the debt allegedly owed to Chase and/or

27  DOES 1 through 10.

28

16

COMPLAINT

49.     Consequently, Defendants engaged in a fraudulent and wrongful foreclosure of the Home in that Defendants did not have the legal authority to foreclose on the Home and, alternatively, if they had the legal authority, they failed to comply with Civil Code Sections 2923.5 and 2923.6.

50.     As a proximate result of the negligent or reckless conduct of the Defendants, Mr. Sibrian is threatened with the loss of his property.

51.     As a proximate result of the negligent actions of the defendants, Mr. Sibrian has suffered general and special damages in an amount according to proof at trial, but not less than $1,000,000.

## THIRD CLAIM FOR RELIEF

### (Quiet Title)

52.     Mr. Sibrian realleges and incorporates by reference paragraphs 1 through 33.

53.     Plaintiff is the legal owner of the property that is commonly known as 3715 E. 52nd Street, Maywood, California 90270, Assessor's Parcel Number: 6311-001-017, with a full legal description as follows:  The West 67 Feet of Lot 1632 of Tract No. 2829, in the City of Maywood, County of Los Angeles, State of California, as Per Map Recorded in Book 42 Page(s) 30 of Maps, in the Office of the County Recorder of the County of Los Angeles, California.

54.     Plaintiff seeks to quiet title against the claims of Chase, and anyone else claiming interest in the property.  Chase and any successors or assignees have no right to title or interest in the property and no right to entertain any rights of ownership including rights of possession.

55.     Plaintiff seeks to quiet title as of January 10, 2011. Plaintiff seeks a judicial declaration that the title to the Home is vested in Plaintiff alone and that Defendants and each of them be declared to have no interest estate, right, title or interest in the Home and that Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Home.

17

56. As Defendants did not have any legal ownership or interest in the Home on the date of foreclosure, allegedly obtained the Home through fraud and wrongful conduct, and failed to adhere to the strict statutory requirements to effectuate the foreclosure sale of the Home, the foreclosure sale was void and invalid. Therefore, the Home is still Plaintiff's property.

57. Accordingly, the Court should rule that the Home remains Mr. Sibrian's property and award consequential damages as proven at trial, but not less than $1,000,000.

## FOURTH CLAIM FOR RELIEF

### (Slander of Title)

58. Mr. Sibrian realleges and incorporates by reference paragraphs 1 through 33.

59. QLS, purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust, wrongfully and without privilege, caused two notices of default, and a Substitution of Trustee, to be recorded against the Home.

60. Thereafter, QLS, again purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust, wrongfully and without privilege, caused a Notices of Trustee's Sale to be recorded against the Home.

61. Finally, QLS, again purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust, wrongfully and without privilege, caused the Trustee's Deed to be recorded against the Home.

62. None of the Defendants, whether jointly or severally, is a trustee, beneficiary or assignee of any beneficiary of any Deed of Trust recorded against the Home. Accordingly, they wrongfully caused the recording of the First Notice of Default, Second Notice of Default, Substitution of Trustee, Notice of Trustee's Sale and Trustee's Deed against the Home.

18

63.   By doing the acts described above, Defendants slandered Plaintiff's title to the Home.

64.   In that the conduct and acts of Defendants violated, among others, California Civil Code section 2924(a)(1)(C), such conduct and acts were not privileged.

65.   The wrongful conduct of Defendants caused Plaintiff to suffer damages in an amount to be proven at trial, but not less than $1,000,000.

## FIFTH CLAIM FOR RELIEF

### (Cancellation of Instrument)

66.   Mr. Sibrian realleges and incorporates by reference paragraphs 1 through 33.

67.   If the wrongfully recorded First Notice of Default, Second Notice of Default, Notice of Sale, Trustee's Deed instruments are left outstanding, Plaintiff will continue to suffer loss and damages.

68.   Plaintiff therefore seeks cancellation of the following recorded instruments, a) First Notice of Default, b) Second Notice of Default, c) Notice of Sale, and d) Trustee's Deed instruments.

69.   Plaintiff is informed and believes, and therefore alleges, that Chase, QLS and DOES 1 through 10 acted willfully and with a conscious disregard for Plaintiff's rights and with a specific intent to defraud and injure Plaintiff, by causing the First Notice of Default, Second Notice of Default, Notice of Sale, Trustee's Deed instruments to be prepared and recorded without a factual or legal basis for doing so.

70.   Upon information and belief, these acts by Defendants constitute fraud, oppression and malice under Cal. Civil Code §3294. Defendants acted with a conscious disregard for the requirements to conduct a non-judicial foreclosure sale under civil code 2924 et sec. knowing they had taken a calculated risk that Plaintiff would not contest.

19

COMPLAINT

1    71.   By virtue of Defendants' willful and wrongful conduct as herein
2  alleged above, Plaintiff is entitled to general and special damages according to
3  proof at trial, but not less than $1,000,000, as well as punitive and exemplary
4  damages as determined by this Court.

5                        **SIXTH CLAIM FOR RELIEF**

6                          **(Breach of Oral Contract)**

7    72.   Mr. Sibrian realleges and incorporates by reference paragraphs 1
8  through 33.

9    73.   Mr. Sibrian entered into an oral contract with the Defendants
10  whereby the Defendants agreed to postpone the foreclosure sale of the Home if
11  Mr. Sibrian completed an application for a loan modification and made monthly
12  payments to Defendants in an amount certain.

13    74.   Mr. Sibrian fully performed such contract with the Defendants and
14  forwent seeking other remedies in reliance on the Defendants' promises.

15    75.   The Defendants breached their contract with Mr. Sibrian by
16  completing a foreclosure sale of the Home without Mr. Sibrian's knowledge while
17  the Defendants continued to negotiate a modification with Mr. Sibrian and
18  collected monthly payments from Mr. Sibrian's bank account.

19    76.   As a result of the aforementioned acts, Mr. Sibrian has been damaged
20  by the Defendants' breach, inter alia, in that he lost money and property and
21  suffered injury in fact and the Defendants have caused to be recorded various
22  documents including a deed of trust which has impaired Mr. Sibrian's title, the
23  total magnitude of which will be fully proven at trial.

24                      **SEVENTH CLAIM FOR RELIEF**

25                        **(Breach of Written Contract)**

26    77.   Mr. Sibrian realleges and incorporates by reference paragraphs 1
27  through 33.

28    78.   Mr. Sibrian entered into a written contract with the Defendants

1    whereby the Defendants agreed to postpone the foreclosure sale of the Home if
2    Mr. Sibrian completed an application for a loan modification and made monthly
3    payments to Defendants in an amount certain.

4    79.    Mr. Sibrian fully performed such contract with the Defendants and
5    forwent seeking other remedies in reliance on the Defendants' promises.

6    80.    The Defendants breached their contract with Mr. Sibrian by
7    completing a foreclosure sale of the Home without Mr. Sibrian's knowledge while
8    the Defendants continued to negotiate a modification with Mr. Sibrian and
9    collected monthly payments from Mr. Sibrian.

10   81.    As a result of the aforementioned acts, Mr. Sibrian has been damaged
11   by the Defendants' breach, inter alia, in that he lost money and property and
12   suffered injury in fact and the Defendants have caused to be recorded various
13   documents including a deed of trust which has impaired Mr. Sibrian's title, the
14   total magnitude of which will be fully proven at trial.

15   ## EIGHTH CLAIM FOR RELIEF
16   ### (Promissory Estoppel)

17   82.    Mr. Sibrian realleges and incorporates by reference paragraphs 1
18   through 33.

19   83.    Defendants Chase and DOES 1 through 10 made a promise, through
20   oral and written representations, that they would not foreclose on the Home if Mr.
21   Sibrian completed an application for a loan modification and made monthly
22   payments in an amount certain to Defendant(s).

23   84.    Defendant Chase and DOES 1 through 10 should have reasonably
24   expected that Mr. Sibrian would rely on such promise;

25   85.    Mr. Sibrian did in fact justifiably rely on that promise by completing
26   the application and making payments rather than pursuing alternate measures to
27   avoid the foreclosure sale including, but not limited to, the filing of a Chapter 13
28   bankruptcy case. Additionally, Plaintiff could have explored the possibility of

21

COMPLAINT

1 | refinancing or marketing and selling the Home, either of which would have been
2 | an option as the property was generating income for Plaintiff. Accordingly,
3 | Defendants Chase and DOES 1 through 10 were estopped from taking any action
4 | that was contrary to the written and oral promises made by it to Plaintiff.

5 |     86.   The Defendants should have reasonably expected that Mr. Sibrian
6 | would rely on such promise;

7 |     87.   Mr. Sibrian did in fact rely on that promise by spending time to
8 | complete the application and making payments rather than pursuing alternate
9 | measures to avoid the foreclosure sale;

10 |     88.   If the promise is not enforced, injustice will continue to occur in that
11 | Mr. Sibrian and his family will lose the Home where they live and will continue to
12 | lose the income derived from the rental of the two rental units of the Home.

13 | **NINTH CLAIM FOR RELIEF**

14 | **(Negligence)**

15 |     89.   Mr. Sibrian realleges and incorporates by reference paragraphs 1
16 | through 33.

17 |     90.   At all times relevant herein, Chase and DOES 1 through 10, acting as
18 | Plaintiff's lender and/or servicer, had a duty to exercise reasonable care and skill
19 | to maintain proper and accurate loan records and to discharge and fulfill the other
20 | incidents attendant to the maintenance, accounting and servicing of loan records,
21 | including, but not limited, disclosing to Plaintiff the status of any foreclosure
22 | actions taken by it, disclosing who owned Plaintiff's Loan to Plaintiff, refraining
23 | from taking any action against Plaintiff that it did not have the legal authority to
24 | do, and providing all relevant information regarding the Loan Plaintiff had with
25 | them to Plaintiff.

26 |     91.   The Defendants made a promise that they agreed to postpone the
27 | foreclosure sale of the Home if Mr. Sibrian completed an application for a loan
28 | modification and made monthly payments in an amount certain to Defendants.

22

92. In taking the actions alleged above, and in failing to take the actions as alleged above, Chase and DOES 1 through 10 breached their duty of care and skill to Plaintiff in the servicing of Plaintiff's loans by, among other things, failing to disclose to Plaintiff that it was foreclosing on Plaintiff's Home while telling him the opposite, treating Home Mortgage as a separate entity to confuse and mislead Plaintiff, preparing and recording false documents, and foreclosing on the Home without having the legal authority and/or proper documentation to do so.

93. At all times relevant herein, QLS, acting as the alleged trustee under the Deed of Trust, but without the legal authority to do so, had a duty to exercise reasonable care and skill to follow California law with regard to foreclosures, avoid any conflicts of interest in exercising its duties, and refrain from taking any action against Plaintiff that it did not have the legal authority to do.

94. In taking the actions alleged above, and in failing to take the actions as alleged above, QLS breached its duty of care and skill to Plaintiff by failing to properly train and supervise its agents and employees with regard to California law regarding the execution and recording of foreclosure documents; executing the Assignment of Deed of Trust, First Notice of Default, Second Notice of Default, and Trustee's Deed without the legal authority to do so; failing to follow California law with regard to foreclosures, including, but not limited to, acting as the trustee under the Deed of Trust when it did not have the legal authority to do so; and taking actions against Plaintiff that it did not have the legal authority to do.

95. As a direct and proximate result of the negligence and carelessness of Defendants as set forth above, Plaintiff suffered, and continues to suffer, general and special damages in an amount to be determined at trial, but not less than $1,000,000.

## TENTH CLAIM FOR RELIEF

### (Negligent Misrepresentation)

96. Mr. Sibrian realleges and incorporates by reference paragraphs 1

23

through 33.

97.   Chase and DOES 1 through 10 made representations to Mr. Sibrian that they would postpone the foreclosure sale of the Home if Mr. Sibrian completed an application for a loan modification and made monthly payments in an amount certain to them.

98.   Chase and DOES 1 through 10's representations were not true.

99.   Chase and DOES 1 through 10 had no reasonable grounds for believing the representations were true when they made them.

100.   Chase and DOES 1 through 10 intended that Mr. Sibrian rely on the representations.

101.   Mr. Sibrian reasonably and justifiably relied on the representations to his detriment.

102.   As a proximate result of Chase and DOES 1 through 10's negligent conduct, Plaintiff has suffered, and will continue to suffer, general and special damages in an amount according to proof at trial, but not less than $1,000,000.

## ELEVENTH CLAIM FOR RELIEF

### (Fraud)

103.   Mr. Sibrian realleges and incorporates by reference paragraphs 1 through 33.

104.   Chase and DOES 1 through 10, orally and in writing, represented to Plaintiff that the Home would not be foreclosed during the time that a loan modification was being reviewed and he made monthly payments. As set forth above, the oral representations were made by employees of Chase.

105.   Chase and DOES 1 through 10 failed to disclose to Plaintiff that they intended to foreclose on the Deed of Trust regardless of the agreement.

106.   The representations of Chase and DOES 1 through 10 were false and fraudulent as they caused a trustee's sale to be scheduled on August 4, 2010 without Plaintiff's knowledge. Although Plaintiff had numerous communications

24

with Chase prior to August 4, 2010, it never disclosed to Plaintiff that the Home would be sold at a trustee's sale on August 4, 2010. Chase and DOES 1 through 10 intentionally made the representations as part of their pattern and practice to deceive borrowers such as Plaintiff into relying to their detriment so that they could foreclose on homes before borrowers could seek other remedies or options. The exact same thing happened to Plaintiff. Plaintiff justifiably relied on the oral and written representations of Chase and DOES 1 through 10 that no foreclosure would take place during the loan modification process and did not seek other remedies or pursue other options during the process. As a proximate result Chase and DOES 1 through 10's fraudulent misrepresentations, Plaintiff lost his home and suffered great emotional distress.

107. Accordingly, as a result of Chase and DOES 1 through 10's fraudulent conduct, Plaintiff has suffered, and will continue to suffer, compensatory, general and special damages in an amount according to proof, but not less than $1,000,000.. Additionally, Chase and DOES 1 through 10 acted with malice, fraud and/or oppression and, thus, Plaintiff is entitled to an award of exemplary and punitive damages.

## TWELFTH CLAIM FOR RELIEF

### (Violation of Rosenthal Fair Debt Collection Practices Act)

108. Mr. Sibrian realleges and incorporates by reference paragraphs 1 through 33.

109. Plaintiff is a consumer and the obligation between the parties is a debt owed pursuant to the subject notes and trust deeds and is a consumer debt pursuant to the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act").

110. Chase and DOES 1 through 10 are lender and mortgage servicing companies that are in the business of collecting and processing mortgage payments.

111. The representative of Chase and DOES 1 through 10 made false

COMPLAINT

misrepresentations in connection with the debt secured by the Deed of Trust on the Home. Specifically, Chase and DOES 1 through 10 represented that if Plaintiff submitted an application for a loan modification and monthly payments of $1,578.88 were made, they would not foreclose on the Home. This representation was false and fraudulent as, after Plaintiff entered into the agreement and sent fourteen payments as agreed, Chase and DOES 1 through 10 foreclosed on the Home anyway without notice.

112. As a proximate result of Chase and DOES 1 through 10's violations of the Rosenthal Act, Plaintiff is entitled to actual and statutory damages, attorney's fees and costs, and such other relief as the court determines is due.

## THIRTEENTH CLAIM FOR RELIEF

### (Unfair Practices under California Business & Professions Code Section 17200, et seq.)

113. Mr. Sibrian realleges and incorporates by reference paragraphs 1 through 33.

114. California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

115. As more fully described above, Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date.

116. Specifically, as fully set forth above, Defendants engage in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential properties and related matters by, among other things,

        (a) Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

26

(b) Executing and recording false and misleading documents;

(c) Executing and recording documents without the legal authority to do so;

(d) Failing to disclose the principal for which documents were being executed and recorded in violation of California Civil Code Section 1095;

(e) Failing to record Powers of Attorney in connection with other recorded documents in violation of California Civil Code Section 2933;

(f) Violating the Security First Rule;

(g) Demanding and accepting payments for debts that were non-existent;

(h) Acting as beneficiaries and trustees without the legal authority to do so;

(i) Failing to give proper notice of a trustee's sale and the postponement of the sale pursuant to California Civil Code Sections 2924g and 2924h;

(j) Failing to comply with California Civil Code Section 2923.5;

(k) Failing to comply with the HAMP guidelines;

(l) Misrepresenting the foreclosure status of properties to borrowers; and

(m) Other deceptive business practices.

117.   Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws and regulations and said predicate acts are therefore per se violations of California Business and Professions Code Section 17200, et seq.

118.   Plaintiff alleges that Defendants' misconduct, as alleged herein, gave, and have given, Defendants an unfair competitive advantage over their competitors. The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

119.   The foregoing acts and practices have caused substantial harm to California consumers.

120.   Plaintiff alleges that as direct and proximate result of the aforementioned acts, Defendants have prospered and benefitted from Plaintiff by collecting mortgage payments and fees for foreclosure related services, and have

27

1   been unjustly enriched from their act of foreclosing on Plaintiff's home when they

2   had agreed not to do so and/or to do so in compliance with applicable laws.

3      121.   By reason of the foregoing, Defendants have been unjustly enriched

4   and should be required to disgorge their illicit profits and/or make restitution to

5   Plaintiff and other California consumers who have been harmed, and/or be

6   enjoined from continuing in such practices pursuant to California Business &

7   Professions Code Sections 17203 and 17204. Moreover, as a result of the

8   aforementioned acts and conduct, Plaintiff has lost money and property and

9   suffered injury in fact, and other members of the public falling victim to

10  Defendants' schemes are likely to be injured.

11     122.   The harm to Plaintiff and to members of the general public outweighs

12  the utility of Defendants' policy and practices. Consequently, their policy and

13  practices constitute an unlawful business act or practice within the meaning of

14  Business and Professions Code §17200.

15     123.   Further, the foregoing conduct threatens an incipient violation of a

16  consumer law, or violates the policy or spirit of such law or otherwise

17  significantly threatens or harms competition.

18     124.   Defendants' practices described above are likely to mislead the

19  general public, and therefore, constitute a fraudulent business act of practice

20  within the meaning of Business and Professions Code §17200. The Defendants'

21  unfair, unlawful, and fraudulent business practices and false and misleading

22  advertising present a continuing threat to members of public in that other

23  consumers will be defrauded into having their property improperly sold at

24  foreclosure. Plaintiff and other members of the general public have no other

25  adequate remedy of law.

26     125.   Plaintiff is therefore entitled to injunctive relief and attorney's fees as

27  available under California Business and Professions Code Sec. 17200 and related

28  sections. These acts and practices, as described in the previous paragraphs, are

28

COMPLAINT

1  unfair and violate Business and Professions Code § 17200 because their policies
2  and practices described above violate all the statutes previously listed as well as
3  California Civil Code § 1709, and consequently, constitute and unlawful business
4  act of practice within the meaning of Business and Professions Code § 17200.

5  ### FOURTEENTH CLAIM FOR RELIEF

6  **(Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542)**

7  126. Mr. Sibrian realleges and incorporates by reference paragraphs 1
8  through 125.

9  127. Since Defendants failed to provide adequate notice of the foreclosure
10  sale of the Home and otherwise failed to conduct the foreclosure sale as required
11  by the law, the sale is invalid and the Home is still his property.

12  128. Under § 542(a) of the Bankruptcy Code, the Defendants must
13  turnover the Home and title to the estate as an entity in possession or custody must
14  deliver to the debtor all property of the estate as set forth in Section 1303 of the
15  Bankruptcy Code.

16  ### FIFTEENTH CLAIM FOR RELIEF

17  **(Avoidance of Transfer of Assets Pursuant to 11 U.S.C. § 544(b) and**
18  **California Civil Code §§ 3439, et seq.)**

19  129. Mr. Sibrian re-alleges and incorporates by reference paragraphs 1
20  through 128.

21  130. The foreclosure sale of the Home was a "transfer" within the
22  meaning of 11 U.S.C. § 101(54) and Section 3439.01(i) (the "Transfer").

23  131. Mr. Sibrian is informed and believes and based thereon alleges that
24  the Transfer was made within one year of the Petition Date.

25  132. Mr. Sibrian is informed and believes and based thereon alleges that
26  present creditors existed at the time of the Transfer that still remain unpaid as of
27  the Petition Date, including, but not limited to Bank of America and The Home
28  Depot/CBSD.

133. Mr. Sibrian is informed and believes and based thereon alleges that future creditors of the Debtor existed following the Transfer, who remained unpaid as of the Petition Date, including, but not limited to Bank of America and Capital One.

134. Mr. Sibrian is informed and believes and based thereon alleges that the Transfer was made with actual intent to hinder, delay or defraud creditors of the Debtor.

135. Mr. Sibrian is informed and believes and based thereon alleges that as a result of the Transfer, the Debtor received less than a reasonably equivalent value, or any value, in exchange for the Transfer.

136. Mr. Sibrian is informed and believes and based thereon alleges that the Transfer was made at a time when the Debtor was insolvent and/or was rendered insolvent by virtue of the Transfer.

137. By reason of the foregoing, the Transfer was fraudulent. Plaintiff is entitled to set aside the Transfer pursuant to 11 U.S.C. § 544(b) and California Civil Code § 3439, et seq., and, if applicable, recover the equivalent value of the Transfer from the Transferee Defendants pursuant to 11 U.S.C. § 550.

## SIXTEENTH CLAIM FOR RELIEF

### (Avoidance of Fraudulent Transfer of Assets Pursuant to 11 U.S.C. § 548(a)(1))

138. Mr. Sibrian re-alleges and incorporates by reference paragraphs 1 through 137.

139. The Transfer was a "transfer" within the meaning of 11 U.S.C. § 101(54).

140. The Transfer occurred within two years of the Petition Date.

141. Mr. Sibrian did not receive reasonably equivalent value in exchange for the Transfer in that, among other things, he did not only lose his residence, which will require him to pay money now to replace it, but he also lost the several

30

1  thousands of dollars in income that the property generated in rental income as a
2  result of his efforts and work in renting them.

3     142.   Mr. Sibrian was insolvent and/or became insolvent as a result of the
4  Transfer.

5     143.   By reason of the foregoing, the Transfer is fraudulent and Mr. Sibrian
6  is entitled to avoid the Transfer for the benefit of the bankruptcy estate pursuant to
7  11 U.S.C. §§ 548(a)(1).

8              **SEVENTEENTH CLAIM FOR RELIEF**

9  **(Avoidance of Preferential Transfer of Assets Pursuant to 11 U.S.C. § 547)**

10    144.   Mr. Sibrian re-alleges and incorporates by reference paragraphs 1
11  through 143.

12    145.   The Transfer was a "transfer" within the meaning of 11 U.S.C. §
13  101(54).

14    146.   The Transfer occurred within ninety (90) days of the Petition Date.

15    147.   The Transferee Defendants were Mr. Sibrian's creditors at the time of
16  the Transfer within the meaning of 11 U.S.C. § 101(10)(A), because at or before
17  the time of the Transfer, Transferee Defendants had a right to payment on account
18  of an obligation owed to them by Mr. Sibrian.

19    148.   The Transfer was to or for the benefit of, the Transferee Defendants
20  within the meaning of 11 U.S.C. § 547(b)(1) because the Transfer either reduced
21  or fully satisfied the debt then owed by Mr. Sibrian to them within the meaning of
22  11 U.S.C. §101(12).

23    149.   Therefore, the Transfer was a Transfer of Mr. Sibrian's property on
24  account of an antecedent debt which Mr. Sibrian was legally bound to pay.

25    150.   At the time of the Transfer, Mr. Sibrian was insolvent.

26    151.   Mr. Sibrian alleges that by reason of the Transfer, Defendants
27  received more than Defendants would otherwise receive if (a) Mr. Sibrian's
28  Bankruptcy Case were under Chapter 7 of the Bankruptcy Code, (b) the Transfer

31

had not been made, and (c) Defendants received payments of such debt to the extent provided by the provisions of the Bankruptcy Code.

152. By reason of the foregoing, Mr. Sibrian may avoid the Transfer pursuant to 11 U.S.C. §547(b).

## EIGHTEENTH CLAIM FOR RELIEF

### (Recovery and Preservation of Avoided Transfers Pursuant to 11 U.S.C. §§ 550(a), 551)

153. Mr. Sibrian re-alleges and incorporates by reference paragraphs 1 through 152.

154. The Transfer was made directly to or for the benefit of Defendants.

155. By reason of the foregoing, Mr. Sibrian requests a judgment against Defendants for return of the Home or of no less than the fair market value of the Home minus the balance due on the debt to Transferee Defendants, actual damages, plus interest at the maximum lawful rate accrued from the date of the Complaint, pursuant to 11 U.S.C. § 550(a) and that such recovery be preserved for the benefit of his estate under 11 U.S.C. § 551.

## NINETEENTH CLAIM FOR RELIEF

### (Declaratory Judgment that Real Property is Property of the Estate)

156. Mr. Sibrian re-alleges and incorporates by reference paragraphs 1 through 155.

157. Since the Defendants failed to provide adequate notice to Mr. Sibrian of the foreclosure sale of the Home and continued accepting payments from Mr. Sibrian and otherwise failed to conduct the foreclosure sale as required by the law, the sale is void or voidable and this Court should rule that the foreclosure sale of the Home is void.

158. Consequently, this Court should rule that Mr. Sibrian's Home is property of the Chapter 13 estate in his case.

COMPLAINT

## TWENTIETH CLAIM FOR RELIEF

### (For Imposition of Constructive Trust against the Transferee Defendants)

159. Mr. Sibrian re-alleges and incorporates by reference paragraphs 1 through 158.

160. Mr. Sibrian is informed and believes and thereon alleges that the Transfer was a fraudulent transfer, was procured for unreasonably small consideration, and was procured by fraud or mistake.

161. Mr. Sibrian is informed and believes and thereon alleges that the Transferee Defendants were unjustly enriched as a result of the Transfer.

162. Mr. Sibrian is informed and believes and thereon alleges that if the Transfer is left outstanding, Mr. Sibrian will be injured, prejudiced and suffer serious injury.

163. By reason of the foregoing, Mr. Sibrian is entitled to the imposition of a constructive trust and order declaring title of the Home to be in his name, for the benefit of his estate.

## TWENTY-FIRST CLAIM FOR RELIEF

### (Violation of the Automatic Stay Arising Under

### 11 U.S.C. § 362(a))

164. Mr. Sibrian re-alleges and incorporates by reference paragraphs 1 through 163.

165. The Defendants caused filed an unlawful detainer complaint against Mr. Sibrian after the Petition Date despite having notice of the bankruptcy filing and stay;

166. Mr. Sibrian suffered emotional distress as a result of the filing of the unlawful detainer and lost income as one of his tenants stopped making rent payments;

167. As a result of Defendant's willful violation of the automatic stay arising by virtue of the provisions of 11 U.S.C. § 362(a)(3), the Defendant should

COMPLAINT

be held in contempt of court, and this Court should award such sanctions against the Defendants as are necessary to compensate Mr. Sibrian for such willful violation, including costs of suit, attorneys fees, and such punitive sanctions as this Court deems appropriate.

## TWENTY-SECOND CLAIM FOR RELIEF

### (Request for Award of Attorneys' Fees)

168.   Mr. Sibrian realleges and incorporates by reference paragraphs 1 through 167.

169.   Mr. Sibrian has incurred and continues to incur attorneys' fees and costs in prosecuting this action.

170.   One or more of the claims for relief pleaded herein entitles Mr. Sibrian to recovery of attorneys' fees and costs.

171.   As a result, this Court should award attorneys' fees and costs to Mr. Sibrian.

COMPLAINT

**WHEREFORE,** Mr. Sibrian prays for judgment against the Defendants and each of them, jointly and severally, as follows:

1.    For a declaration of the rights and duties of the parties, specifically that the foreclosure of the Home was wrongful.

2.    that the foreclosure sale of the Home be declared void or invalid;

3.    that the Transfer be avoided and set aside pursuant to 11 U.S.C. §§ 544, 547(b), 548(a)(1), and/or 549;

4.    for turnover of the Transfer pursuant to 11 U.S.C. §§ 542;

5.    for injunctive relief, including the issuance of a temporary restraining order, a preliminary injunction and a permanent injunction returning title of the Home to him for the benefit of the Chapter 13 estate;

6.    For a declaration of the rights and duties of the parties, specifically that the foreclosure of the Home was wrongful.

7.    For a declaration that Mr. Sibrian is the true and rightful owner of the Home.

8.    For issuance of an Order canceling the Substitution of Trustee, the Second Notice of default, the Notice of Sale and the Trustee's Deed Upon Sale.

9.    To vacate the Trustee's Deed Upon Sale.

10.    To vacate and set aside the foreclosure sale.

11.    To quiet title in favor of Plaintiff and against Defendants.

12.    For compensatory, special and general damages in an amount according to proof at trial, but not less than $1,000,000, against all Defendants.

13.    For punitive damages in an amount to be determined by the Court against all Defendants.

14.    Pursuant to Business and Professions Code § 17203, that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts

35

COMPLAINT

of unfair competition in violation of § 17200, including, but not limited to, the violations alleged herein.

15.    For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees according to proof.

16.    For reasonable attorney's fees and costs.

17.    For reasonable costs of suit and such other and further relief as the Court deems proper.

DATED: April 1, 2011              THE ORANTES LAW FIRM, P.C.

                                  By: _____
                                     Giovanni Orantes
                                     Attorney for Plaintiff

## JURY DEMAND

Plaintiff demands a jury trial for all causes of action set forth herein.

36

COMPLAINT

1

<u>VERIFICATION</u>

2    I, Cosme Rafael Sibrian, am the plaintiff in the above-entitled action.  I

3    have read the foregoing complaint and know the contents thereof.  The same is

4    true of my own knowledge, except as to those matters which are therein alleged

5    on information and belief, and as to those matters, I believe them to be true.

6    I declare under penalty of perjury under the laws of the State of California

7    that the foregoing is true and correct.

8    Executed at ___Los Angeles___, California this __1st__ day of

9    __April__, 2011.

10

11

12    Plaintiff Cosme Rafael Sibrian

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

EXHIBIT 1

Recording Requested By:
WASHINGTON MUTUAL BANK

Return To:
WASHINGTON MUTUAL BANK
2210 ENTERPRISE DR
FLORENCE, SC 29501
DOC OPS M/S FSCE 440

07/19/07

20071709454

Prepared By:
DORA ESTRADA
INVESTORS TITLE COMPANY

141 76245

ZCA1
M39

[Space Above This Line For Recording Data]

# DEED OF TRUST

3017824941-044

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JULY 03, 2007
together with all Riders to this document.
(B) "Borrower" is   COSME R. SIBRIAN, A SINGLE MAN

Borrower's address is   3715 E.52ND STREET, MAYWOOD, CA 90270
. Borrower is the trustor under this Security Instrument.
(C) "Lender" is   WASHINGTON MUTUAL BANK, FA

Lender is a   FEDERAL SAVINGS BANK
organized and existing under the laws of   THE UNITED STATES OF AMERICA

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3005 1/01

☰-6(CA) (0207)

Page 1 of 15           Initials _____
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV 89014
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is CALIFORNIA RECONVEYANCE COMPANY, A CALIFORNIA CORP

(E) "Note" means the promissory note signed by Borrower and dated JULY 03, 2007
The Note states that Borrower owes Lender FOUR HUNDRED SEVENTY FIVE THOUSAND
AND 00/100                                                              Dollars
(U.S. $   475,000.00     ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than AUGUST 01, 2037
(F) "Property" means the property that is described below under the heading "Transfer of Rights
in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

[x] Adjustable Rate Rider      [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider              [ ] Planned Unit Development Rider  [ ] Other(s) [specify]
[x] 1-4 Family Rider           [ ] Biweekly Payment Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

-6(CA) (0207)                    Page 2 of 15        Initials ___        Form 3005 1/01

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of LOS ANGELES

(Type of Recording Jurisdiction)                    (Name of Recording Jurisdiction)

THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE EXHIBIT AND IS MADE A PART HEREOF.

### See Exhibit A Attached

Parcel ID Number:   6311-001-017
3715 E.52ND STREET
MAYWOOD
("Property Address"):

which currently has the address of

[Street]

[City], California 90270   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

-6(CA) (0207)                    Page 3 of 15              Initials _____

Form 3005 1/01

07 1709454

Public Record

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

@ᵧ-6(CA) (0207)                        Page 4 of 18            Initials CLL          Form 3006 1/01

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

—6(CA) (0207)                    Page 5 of 15          Initials _____          Form 3005 1/01

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

@₂-6(CA) (0207)                    Initials: _____        Form 3005 1/01

Public Record

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

-6(CA) (0207)     Page 7 of 13     Initials PRP     Form 3005 1/01

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

-6(CA) (0707)                          Page 8 of 15                 Initials: _____          Form 3005 1/01

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

-6(CA) (0207)    Page 9 of 15    Initials _____    Form 3005 1/01

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

-6(CA) (0207)                                     Page 10 of 16                 Initials: *CRP*

Form 3005 1/01

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

@D-6(CA) (0207)     Page 11 of 15     Initials _____     Form 3005 1/01

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note, Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

-6(CA) (0207)   Page 12 of 15   Initials _QRS_   Form 3005 1/01

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

—6(CA) (0207)                    Page 13 of 15                    Initials _____                    Form 3005 1/01

ZCA2

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
                            -Borrower

COSME R. SIBRIAN

_____ (Seal)
                            -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                        -Borrower

-6(CA) (0207)                    Page 14 of 15                    Form 3005 1/01

EXHIBIT 2

# CHASE ⬡

Page 3
Loan Number: 3017824941

### TRIAL PLAN AGREEMENT

* Your loan is now due for the months of 11/08 to 05/09.
* You must send $0.00 to reduce your total delinquency.
* We must <u>receive</u> the initial payment of $1578.88 along with your signed Trial Plan Agreement ("Agreement") by 07/01/09. After that, the payment schedule outlined below must be followed. If you do not make your payments on time, or if any of your payments are returned for non-sufficient funds, this Agreement will be in breach and collection and/or foreclosure activity will resume.

Your payments must be received in our office on or before the following dates:

$1578.88   08/01/09
$1578.88   09/01/09

Payments are subject to change due to escrow analysis and or interest rate changes, if applicable. If you are notified of a payment adjustment, please contact our office immediately so we can adjust the terms of your Agreement accordingly. If all payments are made as scheduled, we will reevaluate your application for assistance and determine if we are able to offer you a permanent workout solution to bring your loan current.

All of the original terms of your loan remain in full force and effect, unless specifically mentioned within this Agreement. If any part of this Agreement is breached, Washington Mutual has the option to terminate the Agreement and begin or resume foreclosure proceedings pursuant to your loan documents and applicable law.

You acknowledge that in the event you file a petition in bankruptcy, Washington Mutual may elect to take any and all actions necessary, including, but not limited to voiding this Agreement, filing a Motion for relief from the automatic stay or a Motion to dismiss or any permitted state law remedies, which in Washington Mutual's judgment are reasonably necessary to secure or protect our security, the value of the security and/or to enforce our rights under the original terms of your loan.

I/We agree to the above Agreement and will make payments as outlined above. I/We understand that foreclosure action can be taken if the terms of this Agreement are not met.

_____        _____
Cosme R Sibrian                        Date

LO-LM036-003-K8N.5797.071006

JPMorgan Chase Bank, N.A. • Home Lending • 7255 Baymeadows Way, Jacksonville, FL 32256

EXHIBIT 3

This page is part of your document - DO NOT DISCARD

## 20090386830





**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/18/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 14.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 14.00 |







**L E A D S H E E T**



200903180250004

00000208385



002015182

**SEQ:**
**07**

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED



T35



03/19/2009

*20090386830*

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

TS No.: CA-09-261691-ED          Loan No.: 3017824941          Space above this line for Recorder's use

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION. You

may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is $11,525.63 as of 3/15/2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Washington Mutual Bank, FA
C/O Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

*3*

TS No. CA-09-261691-ED
Loan No.: 3017824941
Notice of Default and Election To Sell Under Deed of Trust

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 7/3/2007, executed by COSME R. SIBRIAN, A SINGLE MAN, as Trustor, to secure certain obligations in favor of WASHINGTON MUTUAL BANK, FA, as beneficiary, recorded 7/19/2007, as Instrument No. 20071709454, in Book xxx, Page xxx of Official Records in the Office of the Recorder of LOS ANGELES County, California describing land therein: **as more fully described in said Deed of Trust.**

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $475,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and advances which became due on 11/1/2008 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: 3/15/2009

Quality Loan Service Corp., AS AGENT FOR BENEFICIARY
BY: LSI Title Company ,as Agent

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

EXHIBIT 4

This page is part of your document - DO NOT DISCARD



## 20090397378



Pages:
0003

Recorded/Filed In Official Records
Recorder's Office, Los Angeles County,
California

**03/19/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 14.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 14.00 |



LEADSHEET



200903190110015

00000217851



002017811

SEQ:
04

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED



Recording requested by:
Quality Loan Service Corp

When recorded mail to
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

---

TS No.: CA-09-261691-ED          Loan No.: 3017824941          Space above this line for Recorders use.

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property)  No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is **$11,967.17** as of 3/18/2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise, or (2) establish a schedule of payments in order to cure your default; or both (1) and (2)

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Washington Mutual Bank, FA
C/O Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

TS No : CA-09-261691-ED
Loan No.: 3017824941
Notice of Default and Election To Sell Under Deed of Trust

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan   Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 7/3/2007, executed by COSME R. SIBRIAN, A SINGLE MAN, as Trustor, to secure certain obligations in favor of WASHINGTON MUTUAL BANK, FA, as beneficiary, recorded 7/19/2007, as Instrument No. 20071709454, in Book xxx, Page xxx of Official Records in the Office of the Recorder of LOS ANGELES County, California describing land therein: **as more fully described in said Deed of Trust.**

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $475,000 00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and advances which became due on 11/1/2008 plus amounts that are due or may become due for the following- late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby

The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923 5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

Dated: 3/18/2009                    Quality Loan Service Corp., AS AGENT FOR BENEFICIARY
                                     BY. LSI Title Company

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations

# EXHIBIT 5

This page is part of your document - DO NOT DISCARD

## 20090424850




Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/25/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 11.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID. | 11.00 |



**LEADSHEET**



200903250190005

00000245962


002026289

SEQ:
03

DAR - Title Company (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED

t35

2.

03/25/2009

*20090424850*

Recording requested by

When recorded mail to

Quality Loan Service Corp
2141 5th Avenue
San Diego, CA 92101

---

TS # CA-08-261691-ED            Order # 090191174-CA-DCI

Space above this line for recorders use
Loan # 3017824941
Investor No  3017824941

## Rescission of Notice of Default and Election to Sell
## Under Deed of Trust

**NOTICE IS HEREBY GIVEN:** That **QUALITY LOAN SERVICE CORPORATION**  is duly appointed Trustee under a Deed of Trust dated 7/3/2007, executed by **COSME R. SIBRIAN, A SINGLE MAN,** as Trustor, to secure certain obligations in favor of **WASHINGTON MUTUAL BANK, FA,** as Beneficiary, recorded 7/19/2007, as Instrument No 20071709454, in book xxx, page xxx,  of Official Records in the Office of the Recorder of **LOS ANGELES** County, California describing land therein as more fully described on the above referenced deed of trust

Said obligations including one note for the sum of $475,000 00

Whereas, the present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale, and Whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described, and Whereas, a Notice of Default was recorded on the day and in the book and page set forth below

Notice was recorded on *7/19/2009* in the office of the Recorder of **LOS ANGELES** County, California, Instrument No , in Book , Page , of Official Records

**NOW; THEREFORE, NOTICE IS HEREBY GIVEN**  that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale, it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given

Dated· 3/18/2009

Quality Loan Service Corp., AS AGENT FOR
BENEFICIARY  By: LSI Title Company

RUBI NGU

By.

3

GIOVANNI ORANTES – State Bar No. 190060
THE ORANTES LAW FIRM
3435 Wilshire Blvd., Suite 1980
Los Angeles, CA 90010
Telephone: (213) 389-4362
Facsimile: (877) 789-5776

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Cosme Rafael Sibrian | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. | **CV11 02903 RSWL SSx** |
| JPMorgan Chase Bank, N.A., a New York corporation; Quality Loan Services, a California corporation; and DOES 1 through 10 | **SUMMONS** |
| DEFENDANT(S). | |

TO: DEFENDANT(S): JPMorgan Chase Bank, N.A., a New York corporation; Quality Loan Services, a California corporation; and DOES 1 through 10

A lawsuit has been filed against you.

Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, The Orantes Law Firm, P.C. _____, whose address is 3435 Wilshire Blvd., Ste. 1980, Los Angeles, CA 90010 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ APR - 6 2011 _____

By: _____

**CHRISTOPHER POWERS**

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

---

CV-01A (12/07)                                    SUMMONS

GIOVANNI ORANTES – State Bar No. 190060
THE ORANTES LAW FIRM
3435 Wilshire Blvd., Suite 1980
Los Angeles, CA 90010
Telephone: (213) 389-4362
Facsimile: (877) 789-5776

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| Cosme Rafael Sibrian | CASE NUMBER |
|---|---|
| PLAINTIFF(S)<br>v.<br><br>JPMorgan Chase Bank, N.A., a New York corporation;<br>Quality Loan Services, a California corporation; and<br>DOES 1 through 10<br>DEFENDANT(S). | CV11   02903   RSWL SSx<br><br>**SUMMONS** |

TO:   DEFENDANT(S): JPMorgan Chase Bank, N.A., a New York corporation; Quality Loan Services,
a California corporation; and DOES 1 through 10

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, The Orantes Law Firm, P.C. _____, whose address is
3435 Wilshire Blvd., Ste. 1980, Los Angeles, CA 90010 _____. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint.  You also must file
your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___APR – 6 2011___

By: ___CHRISTOPHER P_____

Deputy Clerk

(Seal of the Court)

1181

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed
60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □) | DEFENDANTS |
|---|---|
| Cosme Rafael Sibrian | JPMorgan Chase Bank, N.A., a New York corporation; Quality Loan Services, a California corporation; and DOES 1 through 10 |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Giovanni Orantes, Esq., SBN 190060, The Orantes Law Firm, P.C., 3435 Wilshire Blvd., Suite 1980, Los Angeles CA. 90010. Telephone No.: (213) 389-4362; Facsimile: (877) 789-5776 | |

### II. BASIS OF JURISDICTION (Place an X in one box only.)

□ 1 U.S. Government Plaintiff     □ 3 Federal Question (U.S. Government Not a Party)

□ 2 U.S. Government Defendant     ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | □ 1 | Incorporated or Principal Place of Business in this State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

### IV. ORIGIN (Place an X in one box only.)

☒ 1 Original Proceeding     □ 2 Removed from State Court     □ 3 Remanded from Appellate Court     □ 4 Reinstated or Reopened     □ 5 Transferred from another district (specify):     □ 6 Multi-District Litigation     □ 7 Appeal to District Judge from Magistrate Judge

### V. REQUESTED IN COMPLAINT: JURY DEMAND: ☒ Yes □ No (Check 'Yes' only if demanded in complaint.)

CLASS ACTION under F.R.C.P. 23: □ Yes ☒ No     ☒ MONEY DEMANDED IN COMPLAINT: $ 1,000,000.00

### VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

### VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| □ 400 State Reapportionment | □ 110 Insurance | □ 310 Airplane | □ 370 Other Fraud | □ 510 Motions to Vacate Sentence Habeas Corpus | □ 710 Fair Labor Standards Act |
| □ 410 Antitrust | □ 120 Marine | □ 315 Airplane Product Liability | □ 371 Truth in Lending | | □ 720 Labor/Mgmt. Relations |
| □ 430 Banks and Banking | □ 130 Miller Act | □ 320 Assault, Libel & Slander | □ 380 Other Personal Property Damage | □ 530 General | □ 730 Labor/Mgmt. Reporting & Disclosure Act |
| □ 450 Commerce/ICC Rates/etc. | □ 140 Negotiable Instrument | | □ 385 Property Damage Product Liability | □ 535 Death Penalty | |
| □ 460 Deportation | □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 330 Fed. Employers' Liability | BANKRUPTCY | □ 540 Mandamus/ Other | □ 740 Railway Labor Act |
| □ 470 Racketeer Influenced and Corrupt Organizations | | □ 340 Marine | □ 422 Appeal 28 USC 158 | □ 550 Civil Rights | □ 790 Other Labor Litigation |
| □ 480 Consumer Credit | □ 151 Medicare Act | □ 345 Marine Product Liability | □ 423 Withdrawal 28 USC 157 | □ 555 Prison Condition | □ 791 Empl. Ret. Inc. Security Act |
| □ 490 Cable/Sat TV | □ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | □ 350 Motor Vehicle | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| □ 810 Selective Service | | □ 355 Motor Vehicle Product Liability | □ 441 Voting | □ 610 Agriculture | □ 820 Copyrights |
| □ 850 Securities/Commodities/ Exchange | □ 153 Recovery of Overpayment of Veteran's Benefits | □ 360 Other Personal Injury | □ 442 Employment | □ 620 Other Food & Drug | □ 830 Patent |
| □ 875 Customer Challenge 12 USC 3410 | □ 160 Stockholders' Suits | □ 362 Personal Injury-Med Malpractice | □ 443 Housing/Acco-mmodations | □ 625 Drug Related Seizure of Property 21 USC 881 | □ 840 Trademark |
| □ 890 Other Statutory Actions | □ 190 Other Contract | □ 365 Personal Injury-Product Liability | □ 444 Welfare | | SOCIAL SECURITY |
| □ 891 Agricultural Act | □ 195 Contract Product Liability | □ 368 Asbestos Personal Injury Product Liability | □ 445 American with Disabilities - Employment | □ 630 Liquor Laws | □ 861 HIA (1395ff) |
| □ 892 Economic Stabilization Act | □ 196 Franchise | | | □ 640 R.R. & Truck | □ 862 Black Lung (923) |
| □ 893 Environmental Matters | REAL PROPERTY | | □ 446 American with Disabilities - Other | □ 650 Airline Regs | □ 863 DIWC/DIWW (405(g)) |
| □ 894 Energy Allocation Act | □ 210 Land Condemnation | IMMIGRATION | | □ 660 Occupational Safety /Health | □ 864 SSID Title XVI |
| □ 895 Freedom of Info. Act | □ 220 Foreclosure | □ 462 Naturalization Application | □ 440 Other Civil Rights | □ 690 Other | □ 865 RSI (405(g)) |
| □ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | □ 230 Rent Lease & Ejectment | □ 463 Habeas Corpus-Alien Detainee | | | FEDERAL TAX SUITS |
| | □ 240 Torts to Land | □ 465 Other Immigration Actions | | | □ 870 Taxes (U.S. Plaintiff or Defendant) |
| □ 950 Constitutionality of State Statutes | □ 245 Tort Product Liability | | | | □ 871 IRS-Third Party 26 USC 7609 |
| | □ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:   Case Number: _____   **CV11   02903**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)     CIVIL COVER SHEET     Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a).  IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

VIII(b).  RELATED CASES: Have any cases been previously filed in this court that are related to the present case? ☑No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　　 ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　　 ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　　 ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐　Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐　Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | State of New York, San Diego County |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
　　Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  4/4/2011

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)　　　　　　　　　　　　　　　　CIVIL COVER SHEET　　　　　　　　　　　　　　　　Page 2 of 2